UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

RICHARD L. HOWARD,

       Plaintiff,

v.                                             Case No. 17-C-209

BRICKLAYERS & TROWEL TRADES
INTERNATIONAL PENSION FUND,

       Defendant.

## DECISION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Richard Howard, who is currently representing himself, filed this action against Defendant Bricklayers & Trowel Trades International Pension Fund (the IPF), alleging that it is wrongfully withholding payments from his pension. Presently before the court is the IPF's motion for summary judgment. For the following reasons, the motion will be granted and the case will be dismissed.

## BACKGROUND

The court takes the facts of the case from the IPF's proposed findings of fact because Howard has failed to respond to them in compliance with Civil Local Rule 56(b)(2). As a result, the IPF's proposed findings of fact will be deemed admitted for purposes of deciding the instant motion. *See Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003) ("We have consistently held that a failure to respond by the non-movant as mandated by the local rules results in an admission.").

Howard is a participant in the IPF, a jointly-trusted, multiemployer employee benefit plan that provides retirement and related benefits to its participants and beneficiaries. Defs.' Proposed Findings of Fact, ECF No. 29. The IPF is managed by a Board of Trustees. At all relevant times, David F. Stupar was the executive director of the IPF. In this capacity, Stupar was responsible for administering and operating the IPF as well as maintaining custody of participant records relating to their eligibility for benefits.

The Bricklayers and Trowel Trades International Pension Fund Rules and Regulations detail the benefits provided by the IPF and the procedure for obtaining these benefits. The IPF provides for two types of retirement benefits: the Normal Retirement Pension, a benefit commencing at or after the normal retirement age of 64, and the Early Retirement Pension, a benefit commencing between ages 55 and 63. The Rules and Regulations specify that the start date of an Early Retirement Pension will be delayed six months for every calendar quarter in which a participant has performed at least one hour of work in "noncovered masonry employment." The Rules and Regulations define "noncovered masonry employment" as "employment or self-employment in the Masonry Industry on or after June 1, 1988 either for an employer that does not have a collective bargaining agreement between the Union and employer or which is not otherwise covered by a collective bargaining agreement between the Union and the employer." ECF No. 30-1 at 2. The Rules further define "masonry industry" as "any and all types of work covered by Collective Bargaining Agreements to which the Union and/or any Local, District Council or Conference are a party; or under the trade jurisdiction of the Union as that trade jurisdiction is described in the International Union's Constitution; or in a related building trade; or any other work to which a craftworker has been assigned, referred or can perform because of his skills and training." *Id.* In

2

determining whether IPF participants have engaged in noncovered masonry employment, the IPF relies on information provided by the applicant regarding his work history, independent research through publicly available channels, and information from Bricklayers local unions.

On May 13, 2014, Howard applied for an "early pension" from the IPF to start in June 2014. He was 59 years old at the time. He certified in the application that he last worked in covered employment on November 19, 2010 for an entity known as Swanson Spray. Stupar sent Howard a letter dated May 22, 2014 acknowledging the IPF's receipt of Howard's application and advising Howard that his application could not be processed until the IPF received his W-2 federal income tax forms for the years 2007 through 2013. Stupar sent a second letter to Howard on August 4, 2014, again requesting copies of Howard's W-2s for these years and reiterating that the IPF could not process his application until it received these documents. In January 2015, Howard provided W-2s for calendar years 2011 through 2014, but he did not provide this information for 2007 to 2010. On March 10, 2015, the IPF conditionally denied Howard's application at that time, pending receipt of the detailed verification of his earnings for 2007 to 2010.

On October 27, 2015, Howard filed a lawsuit in the United States District Court for the Eastern District of Wisconsin, seeking a court order directing payment of his IPF pension. *See Howard v. Int'l Union of Bricklayers & Allied Craftsworkers Dist. Council of Wis.*, 15-cv-1277 (E.D. Wis.). This court dismissed the action because it was not brought against the pension plan itself. *Id.*, ECF No. 31. Howard subsequently filed the instant action on February 17, 2017.

In August 2017, Howard provided a verified employment statement to the IPF detailing his employment from 2007 to 2010. From January 2007 through March 2007, Howard worked at Michaels Corporation as a finisher; from March 2007 through September 2010, he worked at

3

Lakeside System as an agricultural concrete supervisor; and from September 2010 through November 2010, he worked at Swanson Spray Systems as a sprayer. His W-2s reflect that he had earnings in 2011 and 2012 from Foxland Harvestore, earnings in 2013 from Austin Paving, and earnings in 2013 and 2014 from Apple Valley Concrete & Construction. The IPF also received information from Wynn Jones, Wisconsin State Organizer for the Bricklayers & Allied Craftworkers District Council of Wisconsin, who investigated the signatory status and the nature of the work Howard had performed for these employers.

Fund Office personnel, working under Stupar's direction, determined that Michaels Corporation and Swanson Spray Systems were signatory to collective bargaining agreements with the International Union of Bricklayers and Allied Craftworkers or one of its local unions during the time Howard worked for them. They also found that Howard's remaining employers—Lakeside Systems, Austin Paving, Apple Valley Concrete & Construction, and Foxland Harvestore—were not signatory to collective bargaining agreements with the Union during the time Howard worked for them.

On October 19, 2017, the IPF Board of Trustees' Pension Review Committee considered Howard's application for early pension and examined Howard's W-2s, his verified employment statement, information provided by Wynn Jones, and information gathered from internet searches. After reviewing the record, the Review Committee concluded Howard engaged in noncovered masonry employment for Lakeside Systems, Apple Valley Concrete & Construction, Foxland Harvestore, and Austin Paving because this was work he had been assigned, referred to, or could perform due to his skills and training over his career in the masonry industry. The Committee determined Howard had completed at least one hour of work in noncovered masonry employment

in 27 quarters from 2007 to 2014, resulting in a 13-year delay in the commencement date of his early retirement pension. Although Howard is not eligible to collect from his early retirement pension, his retirement benefit will begin in March 2019 when he turns 64 years old. On December 6, 2017, Stupar sent Howard a letter detailing the IPF's determination and notifying him of his appeal rights under the plan and ERISA. The IPF has since waived any requirements under the plan or ERISA that Howard exhaust his appal rights before commencing legal action against the plan.

## LEGAL STANDARD

Summary judgment is appropriate when the moving party shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). All reasonable inferences are construed in favor of the nonmoving party. *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004). The party opposing the motion for summary judgment must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted).

"At the summary judgment stage, the facts must be viewed in the light most favorable to the nonmoving party only if there is 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing Fed. R. Civ. P. 56(c)). "[W]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id.* (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)). "The mere existence of some

alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). Therefore, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott*, 550 U.S. at 380.

Summary judgment is "not a dress rehearsal or practice run; it is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007) (citing *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005)). The court is not required to search through the record to make an argument on behalf of a party. *See Corley v. Rosewood Care Ctr.*, 388 F.3d 990, 1001 (7th Cir. 2004) (citing *Albrechtson v. Bd. of Regents of Univ. of Wis. Sys.*, 309 F.3d 433, 436 (7th Cir. 2002) ("Judges are not like pigs, hunting for truffles buried in the record.")).

## ANALYSIS

Howard maintains that the IPF has ignored his requests to receive early payments from his retirement pension and improperly denied his application for early retirement benefits. The IPF argues that Howard's claims fail as a matter of law because its decisions related to Howard's application were reasonable and supported by the record. It is well established that a court reviews the denial of benefits under a deferential standard when the plan "gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the

plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). Although the plan need not use "magic words" to give the administrator discretionary authority, the "reservation of discretion must be communicated clearly in the language of the plan." *Gutta v. Standard Select Trust Ins. Plans*, 530 F.3d 614, 619 (7th Cir. 2008). Here, the IPF states:

> Subject to the stated purposes of the Fund and the provisions of this Agreement, the Trustees shall have full and exclusive authority to determine all questions of coverage and eligibility, methods of providing or arranging for benefits and all other related matters, they shall have full power to construe the provisions of this Agreement, the terms used herein and the by-laws and regulations issued thereunder.

ECF No. 30-8 at 20–21. Howard does not dispute that this provision gives the trustees broad discretion in managing and interpreting the plan. As a result, the court will review the IPF's denial of benefits under the highly-deferential arbitrary and capricious standard. *Williams v. Aetna Life Ins. Co.*, 509 F.3d 317, 321 (7th Cir. 2007) (citing *Hackett v. Xerox Corp. Long-Term Disability Income*, 315 F.3d 771, 773 (7th Cir. 2003)). Under this standard, "the administrator's decision will only be overturned if it is 'downright unreasonable.'" *Id.* "It is not the function of the district court to decide whether it would have reached the same conclusion as the committee or to substitute its judgment for the judgment of the committee." *Dabertin v. HCR Manor Care, Inc.*, 373 F.3d 822, 828 (7th Cir. 2004). With these considerations in mind, the court will turn to the IPF's determinations as they related to Howard's application to collect from his early retirement pension.

First, the IPF's conditional denial of Howard's application due to his failure to provide information to support his request to collect from his early retirement pension was neither arbitrary nor capricious. Shortly after Howard submitted his application to collect from his early retirement pension, the IPF requested W-2 federal income tax forms for the years 2007 through 2013. Pursuant to Section 8.02 of the Rules and Regulations, "[e]very claimant for benefits shall furnish, at the

7

request of the Trustees, any information or proof reasonably required to determine his benefit rights." ECF No. 30-1 at 6. After multiple requests for the information, and nearly one year after Howard filed his application, the IPF conditionally denied the application, pending receipt of the detailed verification of his earnings for 2007 to 2010. The IPF's decision to deny Howard's application because he did not provide it with all of the information it requested in accordance with the plan's Rules and Regulations is well supported and is not "downright unreasonable." *Williams*, 509 F.3d at 321. Accordingly, the court will grant the IPF's motion for summary judgment with respect to Howard's claim that the IPF ignored his request to collect from his pension.

Second, the IPF's determination that Howard's work in disqualifying employment delayed the commencement of his early retirement pension was reasonable. The IPF explained that Howard's noncovered masonry employment that he had been assigned, referred to, or could perform due to his skills and training over his career in the masonry industry in 27 quarters from 2007 to 2014 delayed the commencement date of his early retirement pension by 13 years. The Review Committee based its decision on several documents, including the plan, Howard's application, his W-2s, his verified employment statement, information provided by Wynn Jones, and information gathered from internet searches. In the December 6, 2017 denial letter, Stupar quoted the relevant sections from the plan's Rules and Regulations that the Review Committee considered in reaching its determination. ECF No. 30-7. The record in this case contains substantial evidence supporting the IPF's conclusion that Howard's noncovered masonry employment delayed his eligibility to collect from his early retirement pension. Therefore, the court will grant the IPF's motion for summary judgment as to Howard's denial of benefits claim.

## CONCLUSION

For these reasons, the defendant's motion for summary judgment (ECF No. 27) is **GRANTED**. The Clerk is directed to enter judgment dismissing the case with prejudice.

**SO ORDERED** this  8th  day of May, 2018.

                                        s/ William C. Griesbach
                                        William C. Griesbach, Chief Judge
                                        United States District Court

---

This order and the judgment to follow are final. The plaintiff may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. *See* Fed. R. App. P. 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). If the plaintiff appeals, he will be liable for the $505.00 appellate filing fee regardless of the appeal's outcome. If the plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* with this court. *See* Fed. R. App. P. 24(a)(1).

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of judgment. The court cannot extend these deadlines. *See* Fed. R. Civ. P. 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.